IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMMY ESPINOZA RODRIGUEZ, TDCJ #459516, § § § | | |
| Petitioner, § § | | |
| v. § | CIVIL ACTION NO. H-09-2228 | |
| § § | | |
| NATHANIEL QUARTERMAN, Director, Texas Department of Criminal Justice - Correctional Institutions Division, § § § § | | |
| Respondent.[1] § § | | |

## **MEMORANDUM AND ORDER**

Petitioner Sammy Espinoza Rodriguez (TDCJ #459516, former TDCJ #376875) is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). He has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, to challenge the administration of his sentence with respect to his eligibility for early release from imprisonment. He has included a copy of his state court application and supporting memorandum. After reviewing all of the pleadings under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, however, the Court concludes that this case must be **dismissed** for reasons set forth below.

**I.    BACKGROUND**

---

[1]   In his petition, Rodriguez names Rissie Owens, in her capacity as Chairperson of the Texas Board of Pardons and Paroles, as the respondent. Because Rodriguez is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division, the Court substitutes Director Nathaniel Quarterman as the proper respondent pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Rodriguez reports that he is presently incarcerated as the result of a judgment entered against him on June 18, 1987, in the 338th District Court of Harris County, Texas. On that date, Rodriguez was convicted of committing aggravated robbery with a deadly weapon in cause number 465547. A jury sentenced him to serve a term of life imprisonment. Court records reflect that the conviction was affirmed on appeal. *See Rodriguez v. State*, No. 01-87-00504-CR, 1988 WL 65689 (Tex. App. — Houston [1st Dist.] June 23, 1988, no pet.).

Rodriguez does not challenge his conviction here. Instead, he challenges the failure of prison officials to release him on the form of parole known as mandatory supervision. In that regard, there are two ways in which a state prisoner becomes eligible for early release from confinement in Texas. The first is by "parole" and the second is by release on "mandatory supervision." Under Texas law, "parole" is "the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(6) (Vernon 2004). By contrast, "mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5). Whereas parole is wholly discretionary, an inmate's release to mandatory supervision is required, subject to certain exceptions, when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n.1 (5th Cir. 2007). Regardless of the distinction, once an inmate is released

2

to mandatory supervision, he is considered to be on parole. *See Jackson*, 475 F.3d at 263, n.1 (citing TEX. GOV'T CODE § 508.147(b); *Coleman v. Dretke*, 395 F.3d 216, 219, n.1 (5th Cir. 2004).

Rodriguez is eligible for parole, but not for mandatory supervision. Rodriguez explains that, as a prisoner serving a term of life imprisonment, he is excluded from eligibility for mandatory supervision by state law due to the length of his sentence. Rodriguez complains that, by denying him eligibility for release on mandatory supervision, state officials have violated his right to due process and equal protection, the separation-of-powers doctrine, and the prohibition against ex post facto laws. Notwithstanding the arguments made in the petition and supporting memorandum, Rodriguez is not entitled to relief as a matter of law for reasons discussed in more detail below.

## II.   DISCUSSION

As outlined above, Rodriguez complains that state officials have denied him eligibility for release onto mandatory supervision in violation of his constitutional rights. According to the petition and supporting memorandum, his claims were rejected by the Texas Court of Criminal Appeals on state habeas corpus review. *See Ex parte Rodriguez*, No. 26,544-03. To the extent that this was an adjudication on the merits, the petition is subject to the standard of review found in the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), codified at 28 U.S.C. § 2254(d). *Williams v. Taylor*, 529 U.S. 362 (2000). Under this standard, a petitioner is not entitled to federal habeas corpus relief unless he shows that the state court's conclusion resulted in a

decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams*, 529 U.S. at 404-08; *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this standard, an "unreasonable" application must be more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

A federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). In that situation, a reviewing court assumes that the state court applied the proper "clearly established Federal law" and then determines whether its decision was

"contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Rodriguez makes no effort to show that the state court's decision is objectively unreasonable or wrong under the governing standard found in § 2254(d)(1). Nevertheless, Rodriguez's claims are examined below under the liberal construction afforded to *pro se* pleadings and the AEDPA standard of review.

**A.     Due Process**

Rodriguez's primary claim is that, as a life-sentenced prisoner, state officials have denied him eligibility for mandatory supervision in violation of his rights under the Due Process Clause found in the Fourteenth Amendment to the United States Constitution. Prison inmates are entitled to protection under the Due Process Clause only when an official action infringes upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The Due Process Clause does not include a right to conditional release before the expiration of a valid sentence. *See Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Accordingly, Rodriguez's due process claim depends on the existence of a constitutionally protected interest created by state law.

Under the law that was in place at the time Rodriguez committed the aggravated robbery in 1986, Texas law afforded eligibility for release on mandatory supervision to all inmates, other than those serving a sentence of death, when the "calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced." TEX CODE CRIM. PROC. art. 42.12, § 15(c) (Vernon 1977). In 1987, the legislature amended the statute to exclude other offenders from eligibility for mandatory supervision.[2] For an inmate who is eligible for mandatory supervision, however, the calculation of his sentence remains the same. TEX. GOV'T CODE § 508.147(a) (Vernon 2004) (providing that, subject to certain exceptions, an inmate is eligible for release to mandatory supervision "when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced")

The Fifth Circuit has recognized that the Texas mandatory supervision scheme does not create a constitutional expectancy of early release with respect to life-sentenced inmates. *See Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002). Absent a constitutional

---

[2] As Rodriguez concedes, inmates who have been convicted of certain serious offenses are not eligible for mandatory supervision because of the nature of their underlying convictions or because a deadly weapon was used during the commission of the offense. *See* TEX. GOV'T CODE § 508.149(a). It appears that the judgment entered in Rodriguez's case contained an affirmative finding that a deadly weapon was used to commit the offense. Likewise, aggravated robbery is among the offenses that disqualify an inmate from eligibility for mandatory supervision. *See id*. at § 508.149(a)(11). Because Rodriguez committed the underlying offense in 1986, before the mandatory supervision statute was amended in 1987, his conviction and the deadly weapon finding do not disqualify him from eligibility for mandatory supervision. Rodriguez discloses that he was not found ineligible for mandatory supervision because of his offense or the deadly weapon finding, but because he is serving a life sentence. Thus, it is the length of his sentence that has disqualified him from eligibility for mandatory supervision release in this case and not the facts of his conviction.

expectancy of early release, Texas inmates who are sentenced to life imprisonment cannot demonstrate the requisite liberty interest or a violation of the right to due process in connection with their eligibility for mandatory supervision. *See id*. The Texas Court of Criminal Appeals has also concluded that inmates sentenced to life in prison are not eligible for mandatory supervision and therefore have no constitutional expectancy of early release. *See Ex parte Franks*, 71 S.W.3d 327 (Tex. Crim. App. 2001) (holding that, under both prior and amended versions of the statute governing release of inmates on mandatory supervision, life-sentenced inmates are not eligible for such release). Rodriguez concedes in his petition that the Texas Court of Criminal Appeals rejected his claims in reliance upon the holding in *Ex parte Franks*. (Doc. # 1, Petition, at 6A). This militates against federal habeas corpus relief.

It is well established that it is not the function of a federal habeas corpus court "to review a state's interpretation of its own law." *Weeks v. Scott*, 55 F.3d 1059, 1063 (citing *Moreno v. Estelle*, 717 F.2d 171, 179 (5th Cir. 1983)). To the extent that Rodriguez's petition implicates questions of state law, this Court accepts "the word of the highest court on criminal matters of Texas as to the interpretation of its law" and does not "sit to review that state's interpretation of its own law" on habeas corpus review. *Arnold*, 306 F.3d at 279 (quoting *Seaton v. Procunier*, 750 F.2d 366, 368 (5th Cir. 1985)). Rodriguez does not demonstrate that, as a life-sentenced prisoner in Texas, he is entitled to early release on mandatory supervision. Therefore, in light of the above-referenced precedent, Rodriguez fails to demonstrate a violation of the Due Process Clause. *See Arnold*, 306 F.3d at 279;

7

*Franks*, 71 S.W.3d at 328; *see also Stewart v. Crain*, 308 F. App'x 748 (5th Cir. Jan. 26, 2009) (rejecting a similar claim by a life-sentenced Texas prisoner, who argued that he was denied early release to mandatory supervision in violation of his civil rights). Accordingly, Rodriguez fails to show that the state court's decision to deny his due process claim was contrary to or involved an unreasonable application of clearly established law.

### B.   Equal Protection

Rodriguez argues further that, by denying him early release on mandatory supervision based on his status as a life-sentenced inmate, officials have discriminated against him unreasonably in violation of the equal protection clause. The Equal Protection Clause requires that similarly situated persons be treated alike. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). To establish an equal protection claim, a petitioner must demonstrate that (1) the state created two or more classifications of similarly situated prisoners that were treated differently; and (2) the classification had no rational relation to any legitimate governmental objective. *See Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir. 1997). A petitioner may also state an equal protection claim if he alleges that his disparate treatment was motivated by any illegitimate animus or subjective ill-will. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (discussing equal protection claims brought by a "class of one"); *but see Engquist v. Oregon Dep't of Agriculture*, — U.S. —, 128 S. Ct. 2146, 2151 (2008) (concluding that a "class-of-one theory of equal protection" does not apply in the context of public employment).

Rodriguez does not allege or show that he has been treated differently from other similarly situated inmates who have been convicted and sentenced to life in prison. Likewise, Rodriguez does not allege facts showing that he has been singled out for ill treatment for any impermissible reason. Rodriguez has not demonstrated the requisite disparate treatment and, therefore, he fails to establish a violation of the Equal Protection Clause. It follows that Rodriguez further fails to show that the state court's decision to deny his claim was contrary to or involved an unreasonable application of clearly established law.

### C.    Separation of Powers

Rodriguez argues further that, by allowing the "state-executive branch" to interfere with powers reserved to the legislature, parole officials have violated his rights under the Separation-of-Powers Doctrine. This allegation does not make an arguable federal constitutional claim.

Separation of powers is a concept or principle that caused the drafters of the Constitution to create distinct judicial, legislative, and executive divisions of the United States government. *See* RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 3.12 at 545 (4th ed. 2007). By creating separate powers, the drafters sought to "establish a system of checks and balances between the branches of government to ensure the political independence of each branch and to prevent the accumulation of power in a single department." *Id.* Such doctrine has never been incorporated, however, and "is not enforceable against the states as a matter of federal constitutional law." *Attwell v. Nichols*, 608 F.2d 228, 230 (5th Cir. 1979) (citing *Sweezy v.*

9

*New Hampshire*, 354 U.S. 234 (1957); *Dreyer v. Illinois*, 187 U.S. 71 (1902)). Therefore, even if the alleged state action violated the doctrine, Rodriguez's claim concerns a matter of state law only, and presents no federal question. *See Attwell*, 608 F.2d at 230. Absent a violation of the federal constitution, Rodriguez's allegation does not warrant federal habeas corpus review. *See Estelle*, 502 U.S. at 67-68.

### D.    Ex Post Facto

Finally, Rodriguez argues that, by denying him eligibility for release on mandatory supervision based on his status as a life-sentenced inmate, officials have violated the prohibition against ex post facto laws. Article I, Section 10 of the United States Constitution provides that no state shall pass an ex post facto law, meaning that states are prohibited from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981). To constitute a violation of the Ex Post Facto Clause, a change in the law "must be both retroactive and to a prisoner's detriment." *Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997). A change in the law is retroactive if it applies to events occurring before its enactment. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). A law is to the prisoner's detriment if it creates a "sufficient risk of increasing the punishment attached to the defendant's crimes." *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir.2004) (citations and quotation omitted).

In this instance, Rodriguez does not demonstrate that there has been a retrospective change in the law to his detriment with regard to his eligibility for mandatory supervision.

As noted above, Rodriguez was convicted in 1987 for an offense that occurred in 1986. The Texas Court of Criminal Appeals has compared the statute that was in place at the time of the offense and the current Texas mandatory supervision statute and concluded that, where the calculation of the sentence is concerned, they are substantively the same. *Ex parte Franks*, 71 S.W.3d at 327-28 (comparing TEX. CODE CRIM. PROC. art. 42.12 § 15(c) (Vernon 1977) with TEX. GOV'T CODE § 508.147(a) (Vernon 2004)). In making that comparison, the Texas Court of Criminal Appeals recognized that both have the same effect with regard to a life-sentenced prisoner's eligibility for mandatory supervision. *See id*. Under both versions, "it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life." *Id.* at 328. Therefore, as the Texas Court of Criminal Appeals noted, Texas has never released life-sentenced inmates to mandatory supervision. *See id.* at 328 n.1. This is fatal to Rodriguez's ex post facto claim.

Rodriguez cannot show that he is eligible for mandatory supervision under the former version of the statute that was in place at the time of the offense and, as such, he has not alleged facts showing that he has been denied eligibility for mandatory supervision as the result of a retroactive change in the law. Under these circumstances, Rodriguez has not demonstrated an ex post facto violation or shown that the state court's decision to deny his claim was contrary to or involved an unreasonable application of clearly established law. Because none of his claims warrant relief under 28 U.S.C. § 2254(d), his petition must be dismissed.

### III.  CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, (the "AEDPA), codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right.  Accordingly, a certificate of appealability will not issue in this case.

### IV.  CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** the following:

1. The motion for leave to proceed *in forma pauperis* (Doc. # 2) is **GRANTED**.

2. The federal habeas corpus petition is **DENIED** and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on July 20, 2009.

_____
Nancy F. Atlas
United States District Judge